## APPEAL OF JOHN ARNDT.

### APPEAL FROM THE ORPHANS' COURT OF LEBANON COUNTY.

Argued May 4, 1887—Decided October 3, 1887.

1. When a debt of a decedent is a lien on his real estate and not barred by the statute of limitations at the confirmation of the sale thereof by order of the Orphans' Court for the payment of debts, the lien of the debt is turned upon the fund, and the creditor's right to participate is not affected by a subsequent delay of distribution.
2. Yorks' Appeal, 110 Pa. 69, distinguished.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ.; PAXSON and CLARK, JJ., absent.

No. 132 July Term 1886, Sup. Ct.

The proceedings in the court below were in the matter of the distribution of the balance in the hands of Sarah Shaud, administratrix of the estate of John Shaud, deceased.

The decedent died on May 18, 1872, leaving children and a widow, Sarah Shaud, to whom letters of administration were granted, and seized of three several parcels of real estate. On May 28, 1874, upon the petition of the administratrix, the

Orphans' Court granted an order to make sale of two parcels of said real estate for the payment of debts. On an alias order of sale, the two tracts were subsequently sold to John Arndt for an aggregate sum of $550, which sale was confirmed on November 14, 1874.

At the decedent's death there were mutual accounts between him and said John Arndt which had been running for more than six years, the balance being in favor of Arndt; and after letters of administration granted, there had been some effort made toward an adjustment of this balance. In her petition for the order of sale, the administratrix had set forth a debt "due John Arndt, compromise for $800." After the sale of the lots to Arndt he went into possession but refused to pay the purchase money, defending a suit brought therefor upon the ground that it had been agreed to between him and the administratrix that the amount of his bids should be made a credit upon his claim against the estate. The suit was settled by the parties in December, 1883, and the purchase money then paid. On March 20, 1885, the administratrix filed her account and *Mr. Howard C. Shirk* was appointed auditor to pass upon exceptions and to report distribution.

On the hearing before the auditor, the foregoing facts were shown, and, on the part of the accountant and of creditors other than Arndt, objection was made to all charges upon Arndt's books for goods furnished more than six years prior to the death of the decedent, as barred by the statute of limitations; and that the claimant was entitled to participate in the distribution of the fund only upon the difference between the debit for goods purchased in the six years immediately preceding the decedent's death, and the amount of the credits for payments made during said period, as shown by said account. The auditor overruled the objection, holding:

From the books of account of John Arndt it appears that the account between him and John Shaud was a running one. May 18, 1866, the debits exceeded the credits $1,246.35. From that time up to the time of the decedent's death Arndt furnished goods to Shaud to the amount of $2,868.41, and during said period Shaud paid to Arndt on account $2,547.99. There was no appropriation of these payments either by Shaud or Arndt. Your auditor will therefore have to appropriate to

the extinguishment of the amount due May 18, 1866, the sum of $1,246.35, and, towards the part payment of the balance due said Ardnt for goods furnished during the six years immediately preceding Shaud's death, he will appropriate the balance of said credit for payments. made by Shaud, being $1,301.64, thus leaving the balance due Arndt, $1,566.77 (Souder v. Schechterly, 91 Pa. 83), and upon the said amount, with interest from May 18, 1872, to November 21, 1874, being $235.80, together amounting to $1,802.57, your auditor will permit the claimant to participate in the distribution.

The auditor having made distribution accordingly and given notice thereof, the report was then excepted to on the ground that Arndt was not entitled to participate at all, for the reason that his entire claim was barred by the statute. In passing upon these exceptions the auditor stated that Yorks' Appeal, 110 Pa. 69, (s. c., 1 Cent. R. 354, 659,) then lately decided, had been called to his attention, but refused to modify his report, holding that he could only correct errors made by him in the disposition of matters raised before him; that any creditor or other person in interest desiring to avail himself of the statute of limitations must interpose it; that this last objection was not made until after the audit was closed and report made, and, in his opinion, he could not entertain the objection at that stage.

On the argument of the exceptions, afterwards renewed, the court, JOHN B. McPHERSON, J., ruled:

We think, however, that the auditor took too limited a view of his own power when he declined to consider the exceptions to his report in the light of Yorks' App., 110 Pa. 69. The objection to Arndt's book account before that decision was made would of course differ in extent from the objection taken afterwards, and the auditor had full power to decide which was correct. Under our rules of court his report was not complete until he had passed upon such exceptions as might be filed thereto, and while it was thus within his control the parties might enlarge the scope of their objections or vary the grounds upon which they were urged. There was a special reason here for allowing such action, because the decisions in Yorks' Appeal were not published in time to influence the first argument before the auditor. We have therefore read

the testimony concerning this claim to see if that case is decisive, and are of opinion that it is directly in point and requires us to exclude John Arndt's account in full. It was not "seated upon the trust" in 1874 by including it in the schedule of debts attached to the petition for an order of sale. That did not "establish" it in any sense, but simply described it as a claim, or apparently a debt, leaving it of course open to such future attack as other persons in interest might see fit to make.

The other exceptions are overruled. The distribution must be modified as follows: . . . . . and thus modified the report is confirmed and distribution decreed in accordance therewith.

The claimant then took this appeal, specifying that the court erred: (1) In not sustaining the auditor in his finding that after the report was made it was too late to set up the statute of limitations; (2) In holding that his claim was barred by the statute.

*Mr. Thos. H. Capp* (*Mr. George B. Schock* with him), for the appellant:

1. The statute of limitations to be available must be pleaded, and this appellant had a right to conclude his case without anything to meet a subsequent plea of the statute, and was entitled to a decree in his favor: Heath v. Page, 48 Pa. 142; Herman v. Rinker, 106 Pa. 121. The jurisdiction of the court in such case is an appellate jurisdiction, not a trial de novo; and the case is analogous to setting up the statute in the Common Pleas for the first time on a motion for a new trial after a verdict by a jury.

2. But, independent of this, Yorks' Appeal does not justify the reversal of the auditor. In the opinion of this court upon the application for the re-argument of that case, it is said: "The relation which subsists between a creditor and the estate of his deceased debtor is that of debtor and creditor, with a trust superadded, by means of which and the machinery of the Orphans' Court, he can demand his proportion of the trust fund after his claim has been established. When so established, it may be said to be seated on the trust, and there is some room for the application of the principle of McClintock's Appeal. But in attempting to establish it the creditor is pursuing the

estate of the decedent as his debtor.    No other relation exists but that of debtor and creditor, and the statute of limitations may be set up in any forum which has jurisdiction of the case."

If the claim of John Arndt had been brought to the notice of the administratrix for the first time on the audit of the account, he would have no standing as against the plea of the statute.    But the debt was to all proper intent and purposes established at that time.    It cannot be argued that a debtor must under all circumstances sue in the Common Pleas to prevent limitation from taking place.    Yorks' Appeal does not so decide, and if this court had so intended it would have so said.    There is no reason why the presentation of a petition to the Orphans' Court by an administrator for leave to sell real estate to pay a debt of the decedent recognized as subsisting and valid, should not suspend the running of the statute, as would be the result if a writ were issued out of the Common Pleas.

We submit that where, as in this case, the debt was promptly brought to the notice of the trustee ; where it was recognized as a debt of the estate, and no other defence ever set up against it ; where the trustee under oath alleged it to have been compromised, and asked and was granted leave to sell real estate to pay it, it is an establishment of the claim so far as to suspend the statute ; that where certain real estate is sold for the express purpose of paying a particular debt, and the money comes into the hands of the trustee for that purpose, it is such a seating on the trust as is contemplated by the authority cited, and cannot afterward be defeated by the plea of the statute.

*Mr. J. P. S. Gobin* (*Mr. A. W. Ehrgood* with him), for the appellees :

The appellant rests his case upon two propositions, which, in fact, are :  (1), that an auditor's report closes the case as far as the law involved in it is found to be by the auditor, and neither the auditor in passing upon the exceptions filed to his account, nor the court, in reviewing the report, can be permitted to apply any new principles ; and, (2), that an existing book account of mutual dealings, a statement of which is pre-

sented in some form to an administrator, establishes the claim as a debt of the estate and seats it on the trust.

1. Under our rule of court, herewith shown, and as the court below said, the auditor's report was not complete until he had passed upon such exceptions as might be filed thereto, and while it was thus within his control the parties might enlarge the scope of their objections or vary the grounds upon which they were urged. And when the auditor had passed upon our exceptions, and his report with the exceptions and his answer, came before the court below, it became the duty of the court which had appointed the auditor to review his report and the exceptions filed, and to set it aside or modify it for errors of fact or law specially excepted to in proper time : Mengas's App., 19 Pa. 222. Besides, the court would have been justified in allowing exceptions to be filed after report was made in court, nunc pro tunc : Diller's Est., 9 L. Bar. 2. The statute of limitations is no longer regarded as an unconscionable plea : Sossong v. Rosar, 18 W. N. 4.

2. The second proposition is controlled by Yorks' Appeal. It cannot be seriously contended that the presentation of a claim to the administrator is the equivalent of judicial proceedings, so as of itself to bar the statute. The effect of so holding would be to take the life out of the case cited, and leave the law in a worse condition than it was previous to that decision. To establish a claim and seat it upon a trust, surely as much will be required in the Orphans' Court as is required to establish a claim in the Common Pleas.

The appellant pressed his claim before the auditor upon the faith of having at one time presented it to the administratrix. What notice was that to, or what effect does it have upon the creditors and others interested who might and did intervene and plead the statute ?—Hoch's App., 21 Pa. 280 ; Ritter's App., 23 Pa. 96 ; Kittera's Est., 17 Pa. 416. The notice to the administratrix and her including the alleged amount due in her petition for the order to sell, is not such a recognition of the debt as to suspend the statute. How can this remove the bar of the statute in the face of the cases deciding that a debt is not revived by the promise of an administrator to pay it?— Fritz v. Thomas, 1 Wh. 66 ; Steel v. Steel, 12 Pa. 64 ; Clark v. Maguire, 35 Pa. 259.

OPINION, MR. JUSTICE STERRETT:

In May, 1872, John Shaud died intestate seized of several parcels of real estate, and letters of administration were duly granted to his widow, Sarah Shaud. At the time of his decease, Shaud was indebted to appellant in a considerable sum on account of mutual dealings theretofore had between them. Appellant's claim was duly presented to the administratrix, but she had no personal assets of the estate with which to pay it. In May, 1874, the Orphans' Court, on her petition, ordered the sale of several portions of the real estate for the payment of debts, including that of appellant. Pursuant to the order of sale two of the pieces were sold, and on report thereof made to the court, the sales were confirmed in November of that year. The fund now in court for distribution is the proceeds of those sales.

It is a fact found by the auditor, and not controverted, that decedent, at the time of his death, was indebted to appellant in the sum of $1,566.77, which debt then became a lien on the real estate, and so continued until the confirmation of sale by the Orphans' Court in November, 1874. Prior to that date the claim had neither lost its lien nor was it barred by the statute of limitations. The effect of the sale and confirmation by the Orphans' Court was to divest the lien of the debt as to the land so sold, and also to stop interest on so much of the debt as the fund realized and applicable thereto, was sufficient to pay: Ramsey's Appeal, 4 W. 71. As was said by Mr. Justice RODGERS, in that case, "A sale under an order of the Orphans' Court for payment of debts is a judicial sale, and has been assimilated in several cases to a sale made by the sheriff under process of a court of law. It cannot be doubted that interest ceases from the time of the return and confirmation of a sheriff's sale ; and I see no reason, as a general principle, to make a distinction between a sale by the sheriff and a sale by an administrator under order of court. The land is taken from the heirs to pay debts ; and it is but reasonable when the money is made by sale of the property and in the hands of the officers of the law, that the debt should be considered as paid to the extent of the money raised by the sale."

The rights of the respective parties are fixed by the confirmation of sale. Lien creditors who were such at that time

are entitled to their respective shares of the fund realized, and delay of the court in decreeing distribution cannot deprive them of their rights. If there is any question as to the lien of a debt, or whether it is barred by the statute of limitations, the status of the claim at the time the sale was confirmed must determine it. Whether it be a debt of record or not, if it was then a lien on the land sold and was not then barred by the statute of limitations, it is entitled to participate in the distribution of the fund, provided it is not all exhausted by prior liens.

We think, therefore, that the distribution recommended by the learned auditor is correct, and that the court erred in holding that appellant's claim was barred by the statute of limitations because more than six years elapsed between the death of the intestate and the date of distribution. Appellant's claim was not barred by the statute, nor had it lost its lien when part of the land incumbered by it was sold by order of court for the very purpose of paying it and other debts of intestate. By the act of the court in confirming the sales, the rights of appellant and others, as they then stood, were fixed; and so far as the question of limitation is concerned, they were unaffected by the subsequent delay in distributing the fund. The rule established in Yorks' Appeal, 110 Pa. 69, does not apply to the facts of this case.

> Decree reversed at the costs of the appellees, and it is now ordered that the fund be distributed in accordance with the report of the auditor.