## Higgins's Estate.

Argued November 25, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

R. J. *Graeff*, with him *Fred B. Moser*, for appellant.

*Stephen L. Gribbin*, with him *Albert Lloyd* and *A. G. Shoener*, for appellees.

OPINION BY MR. JUSTICE MAXEY, January 11, 1937:

The decedent, George J. Higgins, died insolvent on September 7, 1931. At the time of his death he was a resident of Northumberland County and the owner of real estate situated there. A little more than a month before his death the appellant bank entered against him and his wife, in Schuylkill County, two judgments totaling $31,000. Seeking to comply with section 15(a) of the Fiduciaries Act (June 7, 1917, P. L. 447, 20 P.S. sec. 521) and thus preserve its lien against decedent's real estate in Northumberland County beyond the period of one year from the debtor's decease, appellant within that period, on August 30, 1932, transferred certified records of its judgments entered in Schuylkill County to Northumberland County, in the manner provided by the Act of April 16, 1840, P. L. 410, sec. 1 (12 P.S. sec. 891). These were there entered of record, but nothing else was done. There was no substitution of decedent's administrator as the party defendant, and no scire facias or other proceeding was begun, nor were the judgments indexed against the administrator in the manner required by the Fiduciaries Act. After more than a year had elapsed since decedent's death, the administrator sold his real estate in Northumberland County for payment of debts, and by order of the Orphans' Court of that county an auditor was appointed to distribute the proceeds to creditors. Appellant's claim on its judgments was disallowed and denied participation in the fund arising from the sale, on the ground that the requirements of the Fiduciaries Act had not been met and

appellant's lien on the real property had expired at the end of the year following decedent's death. The entire proceeds of sale were exhausted by the lien of other judgments, to which the whole fund was awarded. The court below having confirmed the awards so made, this appeal followed.

Appellant's position is that it is entitled to share equally with other first lien claimants, as though the judgments had been entered in Northumberland County against decedent in his lifetime, or, if this position proves to be untenable, that it may at least share with other creditors who preserved their liens by appropriate proceedings. Its contention is that by section 1 of the Act of 1840, supra, upon the transfer of a judgment from one county to another by filing a certified copy of the whole record, as therein provided for, such judgment "as to lien, revivals, executions, and so forth, . . . shall have the same force and effect, and no other, as if the judgment had been entered . . . in the same court to which it may thus be transferred." The Fiduciaries Act, it is said, does not in terms provide for the case, which we have here, of a judgment transferred from one county to another within the year following a decedent's death, nor does it repeal the Act of 1840. We are therefore urged to hold that the latter act must govern, with the result that appellant's judgments are to be considered as having all the effect, "as to lien," which a judgment entered against decedent in Northumberland County on August 30, 1932, would have had. (By section 15(g) of the Fiduciaries Act a judgment which is a lien at the time of the death of a decedent remains such for a period of five years from his death.) Our attention is also called to the Act of April 16, 1845, P. L. 538 (12 P.S. sec. 894), supplementing and construing the Act of 1840, supra, by declaring that a transferred judgment "might be transmitted and filed in any court in any county, either before or after the substitution of the legal representatives of any deceased party, and the sub-

stitution be made after filing such record; and that in all cases in which any such record should be transferred and filed before any such substitution, the court into which the record might be removed, should, after substitution of parties, proceed thereon as if the judgment had been originally entered in said court. . . ."

The weakness in appellant's position is that the judgments on which its claim rests do not meet the requirement of section 15(g) of the Fiduciaries Act that for a judgment to attain the status of prior liens on decedent's real estate they must be such as "at the time of the death of a decedent shall be liens on real estate owned by said decedent at the time of his death." The Acts of 1840 and 1845 did not and could not make the Schuylkill County judgments liens on decedent's real estate in Northumberland County on September 7, 1931, the date of his death. Nor do these acts purport to accomplish this result. They declare only that the lien of a transferred judgment shall be operative as a lien, in the county to which it is transferred, from the date of its transfer. These acts have always been so construed. In *Hays's Appeal*, 8 Pa. 182, 184, this court said: "The transfer of the judgment to Clinton County, under the act of 1840, created a new lien from the date of its entry, and did not carry with it the lien from the time of the entry of the judgment in Centre County; otherwise, judgments obtained in Clinton County *bona fide* when no lien existed on the records, would be defeated by a lien subsequently acquired. To give such interpretation to the act of 1840, would be contrary to its manifest intent, and destructive of the just rights of *bona fide* creditors. And when extended to other counties, as it must be if adopted in this case, would be productive of most extensive mischief. The lien acquired by the transfer under the act of 1840 must, therefore, date only from the time of its entry on the docket of the county to which it was transferred." See also *Knauss's Appeal*, 49 Pa. 419. The new lien is created in the county to which transfer is

made, as of the date of transfer, even though the old lien in the county where the judgment was entered has expired from lapse of time: *Shotts & Co. v. Agnew et al.,* 81 Pa. Superior Ct. 458.

The Act of 1840, with its supplement of 1845, must be considered as complementary of, and not in conflict with, the provisions of the Fiduciaries Act. It asserts that when a judgment is transferred it shall have the same effect, so far as lien is concerned, as if it had then been entered in the court to which transfer is made. The Act of 1845 declares that if a party to the judgment has died during the interval, between original entry and transfer, this shall not prevent or prejudice the transfer, either before or after there has been substitution of personal representatives for the deceased party. In either event, "after substitution of parties" further proceedings on the judgment may be had, its lien being unaffected by the death of a party, as was pointed out in *Walt's Admrs. v. Swinehart,* 8 Pa. 97, 100.

Therefore, appellant's judgments *when transferred* to Northumberland County *after decedent's death,* but before a year had elapsed, were invested with no more legal effect as to lien than they would have been *if they had then been entered originally in that county.* A judgment entered *after the death of a decedent who was defendant therein* is no different from any other debt, with respect to lien, *unless the provisions of the Fiduciaries Act are complied with.* Section 15(a) requires that the action be pursued within the year "against the executor or administrator of such decedent; and such action shall be indexed, within said period, against the decedent and such executor or administrator, in the judgment index in the county in which such action is brought, and also in the county in which the real estate sought to be charged is situate. . . ." Section 15(d) of the act imposes upon the prothonotary of the county where suit is brought the duty of indexing the action in the judgment index against the decedent and his personal represen-

tative, upon the filing of a præcipe by the plaintiff or his attorney. The requirements of the act are mandatory and must be strictly complied with if the lien is to be preserved. As we said in *Central-Penn Nat. Bank v. Culp et al.*, 320 Pa. 358, 361, 182 A. 239, section 15(a) of the Fiduciaries Act, and prior acts dealing with the subject, "are statutes of repose and not merely of limitation: *Kirk v. Van Horn*, 265 Pa. 549, 109 A. 522, and cases therein cited; *Brennan's Est.*, 277 Pa. 509, 121 A. 321. The statutory requirements must be strictly complied with: *Kirk v. Van Horn*, supra, and cases therein cited. Failure to index the action is fatal to the preservation of the lien: *Brennan's Est.*, supra. A general creditor's right to proceed against the decedent's realty ceases to exist at the expiration of the statutory period unless it has within that time preserved its lien in strict compliance with the terms of the statute: *Com. v. Pool*, 6 Watts 32; *Bindley's App.*, 69 Pa. 295; *Oliver's App.*, 101 Pa. 299; *Smith v. Ribblett*, 233 Pa. 300, 82 A. 245; *Reel's Est.*, 272 Pa. 135, 116 A. 107; *Brennan's Est.*, supra." In *Tourison's Est.*, 321 Pa. 299, 302, 184 A. 95, the present Chief Justice said, in discussing the act: "The purpose of indexing was to charge prospective purchasers or third parties dealing with a decedent's land with notice that it was subject to certain claims. . . . To successfully continue the lien of an ordinary debt against the decedent's estate there must be both the commencement of an action and its indexing by the prothonotary. While the failure to index, even though the action is commenced, relieves the property from the lien in the hands of an heir just as it does when a bona fide purchaser or third party is involved. . . ." See also *Kirk v. Van Horn*, supra. In *Brennan's Est.*, supra, suit was brought within a year from decedent's death, but not prosecuted to judgment, nor was the action indexed as required by section 15(a), above referred to. This court held that (p. 511) "by reason of such default the lien of the debt against the real estate of decedent was

lost." In the case at bar, it is true, no new action was begun, the claims having merged in the judgments entered in Schuylkill County. If supplementary proceedings on the judgments had been deemed advisable, substitution of parties, as suggested in the Act of 1845, supra, might have been resorted to. But in any event proper indexing was essential for the preservation of appellant's lien, and this was wanting. While no section of the Fiduciaries Act is specifically applicable to transferred judgments, we think the scope of section 15(d), relating to indexing by the prothonotary, is broad enough to warrant the indexing of a transferred judgment by the filing of a præcipe in conformity with that section of the act. If this had been done, the judgments would have retained their liens for the full five-year period as provided by section 15(a). Since it was not, the liens expired altogether at the termination of the one-year period following decedent's death, and before his lands were sold.

We agree with the learned court below that "the mere filing of the certified records [of the judgments in Schuylkill County, in the Court of Common Pleas of Northumberland County] was not a compliance with the Fiduciaries Act . . . without which the lien of the Schuylkill County judgments could not be continued against the real estate of George J. Higgins, deceased, located in Northumberland County. . . . The entries were no more than evidence of judgments entered in Schuylkill County and occupied no different position relative to the real estate located in Northumberland County than did the [claims of the] general creditors (see *Henry's Est.*, 34 Pa. Superior Ct. 597)."

The decree is affirmed, at the cost of appellant.